IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAUN AUSTIN | : | CIVIL ACTION |
| | : | NO. 11-2847 |
| v. | : | |
| | : | |
| LEON HILL, et. al. | : | |

O'NEILL, J.                                                                                                                August 1, 2014

## MEMORANDUM

In preparation for trial in the above captioned matter, defendant has filed a motion in limine seeking to preclude certain documents identified by plaintiff as potential trial exhibits. Presently before me is this motion and plaintiff's response thereto. Dkt. Nos. 74 and 75. For the following reasons I will grant defendants' motion in part and deny defendants' motion in part.

## BACKGROUND

Plaintiff asserts claims against defendants Leon Hill and Jamie Brannon pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights. Dkt. No. 23 at 12-14. He alleges that defendants failed to protect him from an assault by a fellow inmate, Eugenio Torres, while incarcerated at Northampton County Prison on May 3, 2009. Id. Austin contends that he was attacked because Torres regarded him as a "snitch" after Austin reported to Officer Brannon that Torres was involved in an unrelated altercation on May 2, 2009. Dkt. No. 35-1 (Austin Dep.) at 31:3-4. After Austin made this report Brannon took no action to separate Torres from Austin. Dkt. No. 35-2 (Brannon Dep.) at 32:15-19; 41:12-16. Instead, Austin contends that approximately thirty minutes later Brannon allowed Torres to distribute clean laundry to the inmates, and that Torres took this opportunity to urinate on Austin's clean laundry before returning it to him. Dkt. No. 35 at 6. He further contends that he reported this incident to Hill

and articulated his fear that the interference with his laundry constituted an increasing threat to his safety because Torres considered him a "snitch." Dkt. No. 35-2 (Austin Aff.) at ¶¶ 6-8. The following day Torres stabbed Austin with a modified razor blade several times, causing severe injuries to his head and face. Dkt. No. 35-1 (Austin Dep.) at 44:10-21. Austin contends that defendants' involvement in the events leading up to the attack is evidence of their awareness that he faced a substantial risk of harm from Torres. Dkt. No. 23 at ¶ 123-127.

Defendants contest Austin's account of the May 2 altercation and Austin's claim that Torres interfered with his laundry and deny that they knew Torres intended to harm Austin. Dkt. No. 34 at 21. Instead defendants contend that Torres attacked Austin because Torres was offended by the nature of crimes for which Austin was incarcerated and by Austin's tendency to discuss those crimes in Torres' presence. Id. Therefore, defendants claim that Torres's attack on Austin was "unexpect[ed] and without warning." Dkt. No. 47 at 2.

## DISCUSSION

Both parties have identified documentary evidence for use at trial. The Fuls Report is excluded as inadmissible hearsay pursuant to my July 7, 2014 Order. Defendants now seek exclusion of fifteen additional documents, P-11, P-13, P-18, P-19, P-21, P-22, P-25, P-26, P-27, P-28, P-29, P-30, P-31, P-32 and P-33, alleging that they are or contain inadmissible hearsay. Dkt. No. 74 at 5. In his response to defendants' motion plaintiff concedes that he does not oppose the exclusion of P-18, P-19, P-25, P-26, P-27, P-28, P-29, or the partial exclusion of P-33. Dkt. No. 75 at 2. Therefore, at issue are the following ten exhibits: P-11, P-13, P-21-24, P-30-32[1] and portions of P-33. I will address each exhibit in turn.

---

[1] Plaintiff states that exhibits P-21 and P-31 are duplicates of the same report that were inadvertently identified as separate exhibits. Pursuant to plaintiff's request I will refer to this document as P-21. Dkt. No. 75 at 8 n 5.

2

I.      P-11:  NCP Investigative Report

Defendants contend that this document contains hearsay statements by Torres and others that should be excluded by redaction.[2]  Hearsay statements are those made by an out-of-court declarant offered for the truth of the matter asserted.  Fed. R. Evid. 801(c).  Plaintiff asserts that the statements identified are not hearsay because they will not be offered for their truth.  Instead, they are probative of the perception of an escalating threat to Austin before the attack.  Dkt. No. 75 at 7.  I agree with plaintiff that "regardless of whether Torres and the other inmates were telling the truth when making these statements . . . they are relevant to the [d]efendants' state of mind and their assessment of whether Torres posed a substantial threat to [p]laintiff's safety." Id.  The statements to which defendants object in P-11 are not hearsay under Rule 801(c) if they are not offered for the truth of the matter asserted.  Therefore, I will deny defendants' motion seeking to exclude them.

II.     P-13:  Report of Extraordinary Occurrence

Former NCP Lieutenant Richard Botteri authored this report after the attack and defendants have stated they intend to call Botteri as a witness at trial.  Dkt. No. 47.  Defendants state that "this document contains a hearsay statement by [i]nmate Tores" but do not specifically identify the statement they wish to exclude.  Dkt. No. 74 at 5.  In response, plaintiff volunteers that he does not oppose redaction of the following statement from the report:  "Inmate Torres

---

[2] The statements at issue are the following:  "According to Austin approx. an hour later Torres came to his cell and asked him why he snitched"; "Austin also indicated that he heard Inmate Ryan Dipalma yell out that he had snitched"; "Austin indicated that when laundry came up he heard Torres say he wanted his and Inmate Wallery's bag"; "According to Austin at about 1400 hrs. he heard Torres on the phone telling the other party how to spell his name, and that he would bust his nose and stab him"; "Austin stated that at about 2130 hrs. Inmate Michael Garcia approached him while he was in his cell and told him he was going to kill him"; "According to Austin after chow at 1000 hrs. the following day when he was playing cards he was approached by Inmates Torres and Knox who stated that they wanted to play winners, and Knox started grabbing at the cards and then grabbed him by the neck."  Dkt. No. 75 at 6.

freely stated to me that 'I cut him (Austin) because I have problem with him.'  Torres then stated that he had used a razor blade.  I asked what happened to the blade and he stated that he flushed it down the toilet."  Dkt. No. 8 at 18.  Accordingly, I will grant defendants' motion to preclude the admission of the Torres statement from the Report of Extraordinary Occurrence.

## III.	P-21:  Formal Misconduct Report

Defendants also seek to exclude a formal misconduct report authored by Officer Stamets describing Torres and another inmate "talking about inmate Austin . . . being a snitch" and stating that Torres went from cell to cell "banging on doors and saying [Austin] was a snitch."  Dkt. No. 74-1 at 8.  Defendants seek exclusion of this document because it was authored by an individual not identified as a witness to testify at trial and because it contains hearsay statements.

This document was identified in plaintiff's pretrial memorandum, which I find to be sufficient.  Additionally, plaintiff asserts that the statements contained in this report are not hearsay because they will be offered to show "Torres's and [d]efendants' state of mind pre-attack."  Dkt. No. 75 at 10.  I agree with plaintiff that if offered for this limited purpose the report is not inadmissible hearsay.  It is unclear at this point whether defendants were aware of this report.  If defendants were not aware of this report it would not be relevant.  Further even if they had seen the report it is unclear whether it would have been sufficient to put them on notice of such a threat to Austin more than five months later.  Therefore, this evidence will be admitted for the limited purpose of demonstrating what effect, if any, it had on the defendants provided that plaintiff establishes defendants were aware of this document and that it was sufficient to put them on notice of a substantial risk of harm to Austin  I will deny defendants' motion to exclude this document.

**IV.     P-22:  2/12/09 Incident Report**

This incident report describes an attack on another inmate allegedly ordered by Torres approximately three months before Austin was attacked.  Dkt. No. 74-1 at 9.  Defendants claim that "it contains numerous hearsay statements by inmate Vega and other NCJ inmates, including what can only be characterized as jailhouse gossip."  Dkt. No. 74 at 5.  Plaintiff contends that again, the report of this incident is not being offered for its truth but instead as evidence of defendants' knowledge and state of mind before the attack.  Dkt. No. 75 at 11.  As with P-21, the formal misconduct report from November 30, 2008, this report is only relevant if plaintiff can connect it to what defendants Hill and Brannon knew or should have known about whether Torres posed a substantial risk of harm to plaintiff on May 3, 2009.  If that is shown, this incident report will be admissible.

**V.     P-30:  7/10/08 Formal Misconduct Report**

This report describes an altercation between Torres and another inmate named Mohammed.  Dkt. No. 74-1 at 15.  It includes the statement that "Torres was yelling 'bloods out' in order to elicit the help of fellow gang members."  Id.  Plaintiff contends that P-30 is a relevant document because it "evidences that Torres was a volatile and aggressive inmate who, previous to his attack on Plaintiff, had been known to assault inmates and create 'serious threats to security' at Northampton County Prison."  Dkt. No. 75.  I disagree.

In order for evidence to be relevant it must make the existence of a material fact more or less probable than it would be without the evidence.  Fed. R. Evid. 401.  Officer Stamets' report that Torres attacked a different inmate months before he attacked Austin does not demonstrate that Torres posed a substantial risk of harm to Austin.  Though this report may be relevant to demonstrating that prison officials might have had notice of a risk of harm to inmate

5

Mohammed, it does not make more or less likely the fact that there was also a risk of harm to Austin. I will grant defendants' motion to exclude this report.

## VI.     P-31:  11/11/08 Formal Misconduct Report

This report alleges that Torres had extra sheets and laundry bags in his cell and contains his statement "Fuck you I'm doing life and I'm not afraid of any of you fucking assholes." Dkt. No. 74-1 at 16. Again, plaintiff contends that this evidence is relevant because "it shows Torres as a volatile inmate previous to his attack on [p]laintiff, and that Torres held a disregard of prison rules and procedure given that he was facing a life sentence." Dkt. No. 75 at 15. Plaintiff also states that this evidence "goes to [d]efendants' state of mind in that it could have been known to [d]efendants before Torres's attack on [p]laintiff and factored in to [d]efendants' assessment of whether Torres posed a substantial threat to [p]laintiff's safety in May, 2009." Id.

As with P-30, this report and the statement contained therein are not relevant. They do not demonstrate that defendants knew or should have known that Torres posed a substantial risk of harm to Austin on May 3, 2009. It is not relevant that Torres possessed extra sheets and laundry bags or whether he was actually afraid of prison staff. Even if plaintiff can demonstrate that the Torres statement was sufficient to put prison officials on notice that Torres "held a disregard for prison rules" that notice would be too general to be probative of the question of whether defendants knew or should have known that Torres posed a substantial risk of harm to Austin. Therefore, I will grant defendant's motion to exclude this evidence.

An appropriate Order follows.